922 F.2d 86
 21 Bankr.Ct.Dec. 355, 13 Employee Benefits Ca 1283
 In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV
Corporation, et al., Debtors.
LTV STEEL COMPANY, INC., BCNR Mining Corporation, Nemacolin
Mines Corporation, and Tuscaloosa Energy
Corporation, Plaintiffs-Appellees,
v.
UNITED MINE WORKERS OF AMERICA, Defendant-Appellee,
Joseph P. Connors, Sr., Donald E. Pierce, Jr., William
Miller, William B. Jordan and Paul R. Dean as
trustees of the United Mine Workers of
America 1974 Benefit Plan and
Trust, Defendants-Appellants.
 No. 246, Docket 90-5020.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 19, 1990.
Decided Dec. 17, 1990.
 
 William F. Hanrahan, Groom and Nordberg, Washington, D.C. (Michael Devorkin, John J. Rieck, Jr., Doar, Devorkin & Rieck, New York City, David W. Allen, Gen. Counsel, United Mine Workers of America, Washington, D.C., of counsel), for defendants-appellants.
 Sharon Katz, Davis Polk & Wardwell (Karen E. Wagner, Davis Polk & Wardwell, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel), for plaintiffs-appellees.
 Before OAKES, Chief Judge, MESKILL, Circuit Judge, and RESTANI,* Judge.
 MESKILL, Circuit Judge:
 
 
 1
 This is an appeal from an order of the United States District Court for the Southern District of New York, Kram, J., affirming orders of the bankruptcy court granting partial summary judgment in favor of plaintiffs-appellees LTV Steel Company, Inc., and LTV Corporation subsidiaries BCNR Mining Corporation, Nemacolin Mines Corporation and Tuscaloosa Energy Corporation (collectively "LTV"). The United States Bankruptcy Court for the Southern District of New York, Lifland, C.J., previously held that LTV is not liable for the continued payment of retiree benefits after the expiration of the collective bargaining agreement. That court also determined that the United Mine Workers of America 1974 Benefit Plan and Trust (Benefit Trust) is responsible for the provision of retiree benefits under the terms of the National Bituminous Coal Wage Agreement of 1984 (Wage Agreement). The questions presented on appeal are whether section 1114 of the Retiree Benefits Bankruptcy Protection Act of 1988, Pub.L. No. 100-334, 102 Stat. 610 (1988) (codified in part at 11 U.S.C. Secs. 1114, 1129 (1990) ("Bankruptcy Protection Act" or the "Act"), applies to LTV and what party, LTV or the Benefit Trust, is required to provide benefits to LTV's retirees.
 
 
 2
 We dismiss for lack of jurisdiction. Appellants have thirty days in which to obtain certification of the judgment of the bankruptcy court in accordance with Bankruptcy Rule 7054(a). Upon proper certification and notification to this Court, this appeal will be reinstated and returned to this panel for consideration of the merits without further argument or briefs.
 
 BACKGROUND
 Facts
 
 3
 In July 1986, LTV sought protection under Chapter 11 of the Bankruptcy Code. 11 U.S.C. Sec. 1101 et seq. In that same year the three mining subsidiaries closed their doors with no intention of reopening. Since that time, LTV has been operating as debtor-in-possession under the Bankruptcy Code.
 
 
 4
 LTV's mine employees were paid pursuant to the collectively bargained Wage Agreement which included terms providing for retiree benefits. These terms included provisions for funding the Benefit Trust. Established by the 1974 Wage Agreement, the Benefit Trust provides health and life insurance benefits to employees retiring after January 1, 1976. Successive Wage Agreements in 1978, 1981 and 1984 perpetuated the Benefit Trust which was funded by employer contributions as specified in the Wage Agreement. The Wage Agreement required LTV to continue paying retiree benefits and contributing to the Benefit Trust for either the term of the Wage Agreement or until LTV was no longer in business.
 
 
 5
 Immediately after declaring bankruptcy, LTV ceased benefit payments to all retirees, claiming such payments were not permitted under the terms of the Bankruptcy Code. LTV subsequently petitioned the bankruptcy court for an order permitting payment of the benefits retroactive to July 1986. That order was granted and LTV recommenced payment of retiree benefits.
 
 
 6
 The Wage Agreement was scheduled to expire on January 31, 1988. In November and again in December 1987, LTV informed the Benefit Trust of the impending expiration of the Wage Agreement, that LTV would cease payment of retiree benefits on the date of expiration and that the Benefit Trust was responsible for paying the retiree benefits on February 1, 1988. The Benefit Trust responded that it would not pay benefits to LTV retirees. Despite the expiration of the Wage Agreement, LTV continued to pay the retiree benefits.
 
 Legislative Environment
 
 7
 In 1986, Congress was spurred into action by the cessation of benefits for approximately 79,000 LTV retirees when LTV filed for bankruptcy. Congress enacted temporary legislation requiring restoration of the benefits, and giving retiree benefit payments the status of administrative expenses, thereby permitting the payments during the reorganization. This temporary legislation was renewed and extended several times, but ultimately expired on October 15, 1987. On June 16, 1988 Congress passed the Bankruptcy Protection Act, applicable to bankruptcy cases commenced on or after June 16, 1988, which requires a trustee in bankruptcy to continue paying retiree benefits throughout reorganization under the plan and at the levels maintained prior to filing for bankruptcy. Section 3 of the Act revives the stopgap legislation that expired on October 15, 1987 and states, in pertinent part:
 
 
 8
 (a)(1) Subject to paragraphs (2), (3), (4), and (5), and notwithstanding title 11 of the United States Code [this title] the trustee shall pay benefits to retired former employees under a plan, fund, or program maintained or established by the debtor prior to filing a petition (through the purchase of insurance or otherwise) for the purpose of providing medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death.
 
 
 9
 ....
 
 
 10
 (c) This section is effective with respect to cases commenced under chapter 11, of title 11, United States Code [this chapter], in which a plan for reorganization has not been confirmed by the court and in which any such benefit is still being paid on October 2, 1986, and in cases that become subject to chapter 11, title 11, United States Code, after October 2, 1986 and before the date of the enactment of the Retiree Benefits Protection Act of 1988 [June 16, 1988].
 
 
 11
 Bankruptcy Protection Act, Sec. 3, Pub.L. 100-334, 102 Stat. 610, 613 (1988). Pursuant to section 3, the trustee in bankruptcy must continue to pay the retiree benefits throughout the reorganization unless the plan is modified through one of the methods specified in the statute.
 
 Procedural History
 
 12
 This adversary proceeding was filed in the United States Bankruptcy Court for the Southern District of New York on June 23, 1988. LTV sought a declaratory judgment that (1) LTV is not responsible for payment of the retiree benefits after the expiration of the collectively bargained Wage Agreement and the Benefit Trust is obligated to pay those retiree benefits, and (2) that the Benefit Trust is liable to LTV for benefits paid by LTV after the expiration of the Wage Agreement.
 
 
 13
 The United States Bankruptcy Court for the Southern District of New York, Lifland, C.J., entered partial summary judgment for LTV in two orders dated August 1 and August 4, 1988. The Benefit Trust filed a motion for leave to appeal. On September 13, 1988, the United States District Court for the Southern District of New York, Knapp, J., heard argument on the finality of the bankruptcy court orders. Judge Knapp determined that if the parties stipulated to and obtained a dismissal of pending counterclaims, the orders would be final and appealable. An order adjudging the bankruptcy court orders to be final was entered on October 17, 1988.
 
 
 14
 The appeal subsequently was assigned to Judge Kram, and the merits of the appeal were heard. After oral argument, Judge Kram held that the Retiree Benefits Bankruptcy Protection Act did not require LTV to continue paying retiree benefits after the expiration of the Wage Agreement and found the Benefit Trust liable for payment of the benefits. An order affirming the orders of the bankruptcy court was entered on March 6, 1990. In re Chateaugay, 111 B.R. 399 (Bkrtcy.S.D.N.Y.1990). This appeal followed.
 
 
 15
 The Benefit Trust contends that the district court erred when it found that the Bankruptcy Protection Act did not require LTV to continue paying retiree benefits and seeks a judgment making LTV responsible for funding the benefits for its retirees. LTV asserts that we lack jurisdiction to hear this appeal because the bankruptcy court's orders were interlocutory.
 
 DISCUSSION
 
 16
 The United States District Court for the Southern District of New York, Knapp, J., on October 17, 1988, entered an order finding the bankruptcy court orders of August 1 and August 4, 1988 final for purposes of appeal within the meaning of 28 U.S.C. Sec. 158. The orders lacked the certification of finality from the bankruptcy court required pursuant to Bankruptcy Rule 7054, which incorporates Rule 54(b) of the Federal Rules of Civil Procedure. Thus, as will be made clear, the bankruptcy court orders are interlocutory, contrary to the findings of the district court.
 
 
 17
 We are obligated to determine the jurisdictional basis of every matter before us. Pursuant to 28 U.S.C. Sec. 158(d), the relevant appellate jurisdictional statute in bankruptcy proceedings, the courts of appeals have jurisdiction "of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." 28 U.S.C. Sec. 158(d) (1988). In contrast, the district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges." 28 U.S.C. Sec. 158(a) (1988).[1] Thus, the district courts have jurisdiction to hear appeals from interlocutory orders in instances where the courts of appeals do not.
 
 
 18
 A district court order reviewing a bankruptcy court's interlocutory order is not a final judgment for purposes of appeal under section 158(d). In re Stable Mews Assocs., 778 F.2d 121, 122 (2d Cir.1985); In re Cash Currency Exchange, Inc., 762 F.2d 542, 545 (7th Cir.) (addressing 28 U.S.C. Sec. 1293(b), predecessor to Sec. 158(b)), cert. denied sub nom. Fryzel v. Cash Currency Exchange, Inc., 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985). Consequently, this Court does not have jurisdiction to hear an appeal from a district court decision affirming an interlocutory order of the bankruptcy court. In re Chateaugay Corp., 876 F.2d 8, 9 (2d Cir.1989) (per curiam); Stable Mews, 778 F.2d at 122. We must, therefore, determine whether the orders of the bankruptcy court were final under 28 U.S.C. Sec. 158(d) in order to ascertain our jurisdiction in this matter.
 
 
 19
 Finality in the bankruptcy context is determined by a less rigid standard than that applicable to other proceedings. 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice & Procedure Sec. 3926, at 112 (1977 & Supp.1990). Orders in bankruptcy cases may be immediately appealed if they resolve discrete disputes within the larger case. In re Moody, 817 F.2d 365, 367-68 (5th Cir.1987); Cash Currency Exchange, 762 F.2d at 546. The disposition of a discrete dispute is generally considered to be the resolution of an adversary proceeding within the bankruptcy action. Moody, 817 F.2d at 367-68; In re Saco Local Development Corp., 711 F.2d 441, 443-46 (1st Cir.1983) (decision based on 28 U.S.C. Sec. 1293, predecessor to Sec. 158). This pragmatic approach to finality permits the courts to address the specific needs of complex bankruptcy proceedings, but does not overcome the general aversion to piecemeal appeals. In re White Beauty View, Inc., 841 F.2d 524, 526 (3d Cir.1988). In the action now before us, the discrete dispute is the adversary proceeding commenced by LTV in 1988 consisting of two claims. The bankruptcy court's orders granting partial summary judgment did not resolve the discrete dispute, but instead disposed of only one of the pending claims. The issue of whether the Benefit Trust must reimburse LTV for retired employee benefit payments made after the expiration of the Wage Agreement and before the August 4, 1988 bankruptcy court order still remains to be decided.
 
 
 20
 Bankruptcy Rule 7054 states that Rule 54(b) of the Federal Rules of Civil Procedure, which concerns judgments involving multiple claims or multiple parties, applies in adversary proceedings. 11 U.S.C. Rule 7054 (1988). Rule 54(b) states:
 
 
 21
 When more than one claim for relief is presented in an action, ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 
 
 22
 Fed.R.Civ.P. 54(b). An order granting partial summary judgment is interlocutory. Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 742-43, 96 S.Ct. 1202, 1205-06, 47 L.Ed.2d 435 (1976); 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice p 110.08 (1990). According to the terms of Rule 54(b), an interlocutory order does not become final until the court determines that there is no just reason for delay and expressly directs entry of a final judgment. In re King City Transit Mix, Inc., 738 F.2d 1065, 1066 (9th Cir.1984) (per curiam). That finality determination must be made in the context of the less rigid finality requirements of section 158(d), rather than section 1291, because section 158(d) is the relevant standard of finality in bankruptcy adversary proceedings. 28 U.S.C. Sec. 158(d) (1988); In re Wood and Locker, Inc., 868 F.2d 139, 145 (5th Cir.1989).
 
 
 23
 In the appeal now before us, the August 1 and August 4 orders granting partial summary judgment in favor of LTV are interlocutory orders and remain interlocutory until the bankruptcy court determines that the orders are final within the context of section 158(d). Wood and Locker, 868 F.2d at 145. Because the parties did not petition the bankruptcy court for a determination of "no just reason for delay" and the entry of a final judgment pursuant to Rule 54(b), we do not have jurisdiction to hear this appeal.
 
 
 24
 The Benefit Trust contends that we have jurisdiction under Forgay v. Conrad, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848). Forgay treated as final an appeal from an order that directed immediate transfer of land, slaves and money and ordered an accounting, despite the absence of the accounting and judgment. Id. The Benefit Trust correctly states that Forgay has been applied in the bankruptcy context and has been extended by several courts. In this Circuit, however, we have limited Forgay to its facts. See Cinerama, Inc. v. Sweet Music, S.A., 482 F.2d 66, 71 (2d Cir.1973). We decline to extend the Forgay analysis to this case. In contrast to Forgay, the pending action does not involve a transfer of real property or chattels. Furthermore, Forgay applies to the partial adjudication of a single claim, while this action involves multiple claims. See Zwack v. Kraus Bros. & Co., 237 F.2d 255, 262 (2d Cir.1956).
 
 
 25
 The Benefit Trust alternatively asserts that the exception to the final judgment rule developed in Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), applies to this appeal. The Benefit Trust incorrectly suggests that Gillespie permits an appeal from an interlocutory order based on a balancing of the inconvenience and cost of piecemeal review against the danger of denying justice by delay. Granted, Gillespie encourages a practical approach to finality. The Supreme Court, however, has expressly rejected the view that Gillespie permits the court to decide close cases of finality by an ad hoc balancing, and has recommended that Gillespie be limited to its unique facts. Coopers & Lybrand v. Livesay, 437 U.S. 463, 477 n. 30, 98 S.Ct. 2454, 2462, n. 30, 57 L.Ed.2d 351 (1978); 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice p 110.12, at 110 (1990).
 
 
 26
 For the foregoing reasons, it is clear that we lack jurisdiction to hear the appeal. In other cases, however, we have held that subsequent entry of a final judgment following a remand is sufficient to validate a premature notice of appeal if the opposing party is not prejudiced by the decision. See Leonhard v. United States, 633 F.2d 599, 611 (2d Cir.1980) ("In the absence of prejudice to the nonappealing party, this Court too has declined to dismiss premature notices of appeal where subsequent actions of the district court have imbued the order appealed from with finality."), cert. denied, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). We have adopted this remedy when a notice of appeal was filed before a Rule 54(b) certification was obtained. Gumer v. Shearson, Hammill & Co., 516 F.2d 283, 285 (2d Cir.1974) (technical deficiency easily remedied by remand). This approach has been followed in other circuits as well.[2]
 
 
 27
 We find it appropriate to provide the parties with an opportunity to cure the jurisdictional defect. Accord In re Durability, Inc., 893 F.2d 264, 266 (10th Cir.1990) (Rule 54(b) certification not obtained prior to appeal to Court of Appeals, parties permitted time to secure certification). Both the bankruptcy court and the district court expressed belief that the orders were appealable. It is necessary, however, to comply with the technical requirements of Rule 54(b).
 
 
 28
 We accordingly dismiss this appeal without prejudice to its being reinstated upon securing the entry of a final judgment from the bankruptcy court. See id. Upon reinstatement, this panel will resolve the appeal on the merits without further briefing or oral argument. See General Motors Corp. v. Dade Bonded Warehouse, Inc., 498 F.2d 327, 328 (5th Cir.1974).
 
 
 
 *
 Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation
 
 
 [1]
 28 U.S.C. Sec. 158(b) permits the establishment of a bankruptcy appellate panel and strictly limits the jurisdiction of that panel. Section 158(b) is not relevant to this appeal
 
 
 [2]
 Martinez v. Arrow Truck Sales, Inc., 865 F.2d 160, 161-62 (8th Cir.1988) (per curiam); Lewis v. B.F. Goodrich Co., 850 F.2d 641, 643-46 (10th Cir.1988) (in banc); Crowley Maritime Corp. v. Panama Canal Comm'n, 849 F.2d 951, 954 (5th Cir.1988); Tidler v. Eli Lilly & Co., 824 F.2d 84, 85-86 (D.C.Cir.1987); Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Wisconsin, 760 F.2d 177, 180-81 (7th Cir.1985); Freeman v. Hittle, 747 F.2d 1299, 1302 (9th Cir.1984); Tilden Financial Corp. v. Palo Tire Serv., Inc., 596 F.2d 604, 607 (3d Cir.1979). But see Oak Constr. Co. v. Huron Cement Co., 475 F.2d 1220, 1221 (6th Cir.1973) (per curiam) (lack of jurisdiction cannot be cured by belated Rule 54(b) certification)