**In re NEW YORK TRAP ROCK CORPORATION, Lone Star Industries, Inc., et al., Debtors.**

**Bankruptcy Nos. 90 B 21276 to 90 B 21286, 90 B 21334 and 90 B 21335.**

United States Bankruptcy Court, S.D. New York.

April 17, 1991.

in arrear at the time the mortgage was executed belong to the mortgagor.

Proskauer Rose Goetz & Mendelsohn, New York City, for debtors.

Wachtell Lipton Rosen & Katz, New York City, for Creditors' Committee.

Willkie Farr & Gallagher, New York City, for Equity Committee.

DECISION ON MOTION FOR AN ORDER AUTHORIZING REJECTION AND TERMINATION OF CERTAIN EMPLOYEE BENEFIT AND COMPENSATION AGREEMENTS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The above-captioned Chapter 11 debtors have moved pursuant to 11 U.S.C. § 365 to reject and/or terminate the debtors' Executive Medical Plan (the "EMP"). Significantly, the debtors contend that 11 U.S.C. § 1114 does not apply because; (1) the contracts providing for the medical benefits do not constitute a "plan" within the meaning of § 1114; (2) the respondents do not come within the scope of § 1114; (3) § 1114 is not intended to cover special benefits or individual contracts for a few senior executives. The respondents were the six highest ranking officers of the debtors and were the control group of the debtors when EMP was created. However, these officers did not participate in the actual creation of the EMP. Two of the respondents, Jerome Bennett ("Bennett") and Robert W. Hutton ("Hutton") have filed objections to the debtors' motion and request a continuation of their benefits pursuant to the EMP.

Bennett and Hutton claim that the proposed termination of benefits under the EMP violates their rights under 11 U.S.C. §§ 1114 and 1129(a)(13). They claim that under 11 U.S.C. § 1114 the debtors may not seek to terminate or modify the benefits under the EMP until after the debtors attempt to reach an agreement with their authorized representative, within the meaning of 11 U.S.C. § 1114, as to what modifications to their benefits may be necessary to permit the reorganization of the debtors.

## FINDINGS OF FACT

1. On December 10, 1990, the debtors filed with this court their voluntary petitions for reorganizational relief under Chapter 11 of the Bankruptcy Code and were continued as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108. By order of this court on the same day the cases were consolidated for joint administration in accordance with Bankruptcy Rule 1015(b).

2. The EMP was created by the debtors on February 25, 1987 for the purpose of providing special post-retirement or post-termination benefits to six individuals who at that time were the corporate executive officers of the debtor, Lone Star Industries, Inc., sometimes referred to as Lone Star Cement or Lone Star. The six individuals were the highest ranking officers of Lone Star when the EMP was created. They held the following offices: Chairman of the Board and Chief Executive Officer, President, Executive Vice President, Senior Vice President and General Counsel, Vice Chairman (International Operations), Chief Financial Officer and Vice Chairman.

3. The EMP provides for the full payment of 100% of each participant's medical expenses, including dental expenses, prescription charges, eye exams and eye glasses. The EMP covers such expenses for "qualified dependents" of each participant, which includes each such participant's spouse and dependent children. The cost to the debtors of the EMP for each participant (including one dependent) is approximately $763.00 per month.

4. The EMP coverage was outlined in a notice which the debtor, Lone Star, transmitted to each of the six respondents, dated April 16, 1987, stating as follows:

FROM: John J. Martin

RE: *Executive Medical Plan*

Please be advised that at a February 25, 1987 meeting of the Compensation and Stock Option Committee of the

Board, the Committee approved participation in the Lone Star Executive Medical Plan (a copy of which is attached) by the present members of the Corporate Executive Office (namely, Jerome Bennett, R.W. Hutton, John J. Martin, Carmine J. Muratore, James E. Stewart and William M. Troutman) and their qualified dependents in the following instances, (1) retirement by any such member and the receipt by such person of retirement benefits from Lone Star (whether or not employed by Lone Star at the time of retirement), (2) termination of Lone Star's employment of any such member by Lone Star without "cause" (as defined in the attached), (3) the resignation from Lone Star of any such member following a "change of control" (as defined in the attached) or (4) the death or "disability" (as defined in the attached) of any such member.

Participation in the Executive Medical Plan is to continue for the life of the member and his spouse and for so long as any of his children continue as qualified dependents.

The committee also agreed that the Medical Plan would not be changed from the attached so as to reduce the benefits available to such persons.

I have sent each of the members of the Corporate Executive Office a copy of this memorandum.

5. Respondent, Hutton, testified that he had been employed by Lone Star from 1964 through his retirement in 1990. During this period he held various offices up to Chairman and Chief Executive Officer. He is 70 years of age and has cancer of the vocal chords. He testified that he could not be eligible for private medical benefits elsewhere in light of his age and medical condition. His wife is 68 years of age and is similarly ineligible for private medical benefits elsewhere because of her age and surgery for a malignant ovarian cyst.

6. Hutton receives a pension from Lone Star of approximately $135,000.00 per year. There was no evidence to show that Hutton's gross income for the twelve months preceding the filing of the debtors' Chapter 11 cases equalled or exceeded $250,000.00, as prescribed under 11 U.S.C. § 1114(*l*).

7. Respondent, Bennett, did not present any evidence. There was no evidence introduced by the debtors to establish that Bennett's gross income for the twelve months preceding the filing of the debtors' Chapter 11 cases equalled or exceeded $250,000.00, the disqualifying figure specified in 11 U.S.C. § 1114(*l*).

## DISCUSSION

In determining whether or not the respondents' benefits are paid under a "plan" within the meaning of 11 U.S.C. § 1114, reference must be made to 11 U.S.C. § 1114(a), which provides:

**§ 1114. Payment of insurance benefits to retired employees.**

(a) For purposes of this section, the term "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to the filing a petition commencing a case under this title.

The phrase "any plan, fund, or program" is not defined in 11 U.S.C. § 1114. Section 1114 was adopted on June 16, 1988 as part of the Retiree Benefits Bankruptcy Protection Act of 1988, Pub.L. 100–334, 102 Stat. 610–613 (1988), and is applicable to all Chapter 11 cases commenced after June 16, 1988. This legislation was enacted in response to the termination of the health and life insurance benefits of approximately 79,000 retirees in the *LTV Corporation* Chapter 11 case. *See LTV Steel Co., Inc. v. United Mine Workers of America (In re Chateaugay Corp.)*, 922 F.2d 86, 88–89 (2d Cir.1990). Pursuant to this legislation, a trustee in bankruptcy or a debtor in possession is required to continue to pay retiree benefits throughout reorganization under a "plan, fund, or program" and at the levels

maintained prior to the filing of the bankruptcy case, until or unless a modification is agreed to by the parties or ordered by the court.

If a trustee or a debtor in possession seeks to modify or terminate retiree benefits, the court is required to appoint an "authorized representative" in accordance with 11 U.S.C. § 1114(c)(2). If negotiations between the trustee or debtor in possession and the retirees' authorized representative produces no agreement, a court-approved modification may be sought pursuant to 11 U.S.C. § 1114(g). All retiree benefit payments are accorded the status of administrative expenses under 11 U.S.C. § 503 pursuant to the direction specified in 11 U.S.C. § 1114(e)(2).[1]

*Plan, Fund, or Program*

■ Because 11 U.S.C. § 1114 does not define the words "plan, fund, or program" reference should be made to the Federal legislation which protects employees' benefit rights, namely, the Employee Retirement Income Security Act ("ERISA"), 29 U.S. §§ 1001, *et seq.*, where these same words are used. Section 1002 of this statute defines an employee welfare benefit plan as follows:

### § 1002. Definitions

For purposes of this subchapter.

(1) The terms "employee welfare benefit plan" and welfare plan: mean any *plan, fund, or program* which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such *plan, fund, or program* was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprentice-ship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions). (Emphasis added).

The determination of whether or not a "plan, fund, or program" exists depends upon the surrounding circumstances in each case.

In summary, a "plan, fund, or program" under ERISA is established if from the surrounding circumstances a reasonable. person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. To be an employee welfare benefit plan, the intended benefits must be health, accident, death, disability, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or program.

*Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982). The distinguishing feature of most of the benefits paid under an ERISA "plan, fund, or program" is that "most of these benefits ... accumulate over a period of time and are payable only upon the occurrence of a contingency outside of the control of the employee." *Massachusetts v. Morash,* 490 U.S. 107, 115–16, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98, 109 (1989). The Supreme Court ruled that an employer's program calling for vacation payments did not qualify as an ERISA "plan, fund, or program" because ordinary vacation payments are typically fixed, due at known times, and do not depend on contingencies outside the control of the em-

---

**1.** 11 U.S.C. § 1114(e)(2) provides as follows:
  (2) Any payment for retiree benefits required to be made before a plan confirmed under sec-tion 1129 of this title is effective has the status of an allowed administrative expense as provided in section 503 of this title.

ployees. *Massachusetts v. Morash, Id.* In the instant case, the medical benefits in question are certainly beyond the control of the respondents and are not fixed or due at known times. Similarly, customary benefits paid by an employer for sick days and vacations are not regarded as covered by ERISA, even if the employer's payroll practice included the payment of these benefits upon termination, *See Shea v. Wells Fargo Armored Serv. Corp.*, 810 F.2d 372, 377 (2d Cir.1987). However, "plans to pay employees severance benefits, which are payable only upon termination of employment, are employee welfare benefit plans within the meaning of the Act." *Massachusetts v. Morash*, 490 U.S. at 116, 109 S.Ct. at 1673, 104 L.Ed.2d at 109 (citations omitted). Vacation pay, as distinguished from medical benefits and severance benefits are excluded from ERISA as a matter of policy because "the extension of ERISA to claims for vacation benefits would vastly expand the jurisdiction of the federal courts, providing a federal forum for any employee with a vacation grievance." *Massachusetts v. Morash*, 490 U.S. at 118–19, 109 S.Ct. at 1675, 104 L.Ed.2d at 111.

The debtor objects to characterizing its plan as a qualified benefit "plan, fund, or program" because it is unfunded and is paid out of the debtors' general funds, without the supervision of an appointed administrator. The requirement that a plan must be funded and under the aegis of an appointed administrator was rejected in connection with cases involving qualified ERISA plans. *See Holland v. Burlington Indus., Inc.*, 772 F.2d 1140, 1145–46 (4th Cir.1985), *summarily aff'd sub nom. Brooks v. Burlington Indus., Inc.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986); *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320, 326 (2d Cir.1985), *summarily aff'd sub nom. Roberts v. Burlington Indus., Inc.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986).

Not only do the debtors have a plan or program for paying executive medical benefits, but that plan is in writing and is part of the debtors' contractual obligations to the respondents. Indeed, the debtors characterize their plan for paying executive medical benefits as the "Executive Medical Plan."

## Retired Employees

■ The debtors also argue that the respondents are key retired officers and are not "retired employees" within the meaning of 11 U.S.C. § 1114. The debtors reason that the respondents were the debtors' control group when EMP was adopted. These key executives are the only persons who received the EMP benefits, which are more generous than those provided to other retirees under the debtors' Retiree Medical Plan for its retired employees.

As in the case of the words "plan, fund, or program", the words "retired employees" are not defined in 11 U.S.C. § 1114. Accordingly, for purposes of determining who is an employee, reference should be made to the term "employee" as used under ERISA. "Employee" is defined in 29 U.S.C. § 1002(6) as meaning "any individual employed by an employer." In *Dodd v. John Hancock Mutual Life Ins. Co.*, 688 F.Supp. 564, 571 (E.D.Cal.1988), it was held that an owner/principal stockholder of a corporation who was also the salaried president of the corporation should be treated as an employee for purposes of determining whether the owner may be a participant in an ERISA plan. There was no basis for disregarding the corporate form simply because a self-employed individual elected to incorporate and employ himself as president. Hence, the debtors' assertion that the respondents are "not the type of workers for which (sic) Congress was concerned" lacks support. There is nothing in the language in 11 U.S.C. § 1114 to authorize an arbitrary distinction between employees under a retirement benefits plan based on the degree of control exercised by the employees, the positions held, or the size of the group. There is a restriction, however, as to the remuneration received by an employee which would disqualify coverage under 11 U.S.C. § 1114. Subsection (*l*) excludes any retiree, or the spouse or dependents of such retiree, if the retiree's gross income for the twelve months preceding the filing of the bankruptcy petition

equals or exceeds $250,000.00, unless such retiree is unable to obtain the benefits in question elsewhere. There was no evidence that the respondents were disqualified by reason of the gross income exception.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The respondents are employees of the debtors entitled to receive medical benefits under the debtors' Executive Medical Plan, which is a plan, fund, or program covered under 11 U.S.C. § 1114 and maintained or established by the debtors before the Chapter 11 petition for the purpose of benefitting certain executive employees.

3. The debtors' motion for authority to terminate the respondents' benefits under the debtors' Executive Medical Plan without having to comply with 11 U.S.C. § 1114 is denied.

SETTLE ORDER on notice.