In re WASTE SYSTEMS INTERNA-
TIONAL, INC., et al., Debtors.

No. 01–99(MFW) to 01–129(MFW).

United States Bankruptcy Court,
D. Delaware.

July 19, 2002.

Victoria Watson Counihan, Greenberg
Traurig, LLP, Wilmington, DE, Daniel C.
Cohn, Cohn, Kelakos, Khoury, Madoff &
Whitesell, LLP, Boston, MA, for Waste
Systems International, Inc.

John C. Phillips, Phillips, Goldman & Spence, P.A., Wilmington, DE, John N. Salla, Eizen, Fineburg & McCarthy, PC, Philadelphia, PA, for H. Gabe Baldwin.

### OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Objection of Waste Systems International, Inc. ("WSI") to the Administrative Claim of H. Gabe Baldwin ("Gabe"). For the reasons set forth below, we will deny Gabe's Administrative Claim.

### I. FACTUAL BACKGROUND

On July 2, 1999, Gabe's children [2] sold their company, Eastern Trans–Waste of Maryland ("ETW"), to WSI in exchange for millions of shares of WSI common stock ("the Merger"). (Stipulation of Facts, ¶ 1.) In connection with the Merger, Gabe transferred real estate and improvements located at 1315 First Street, S.E., Washington, D.C. ("the First Street Facility") to WSI Acquisition Co. (Id. at ¶ 2.) Subsequently, WSI Acquisition Co. was merged into ETW, then a wholly owned subsidiary of WSI. (Id. at ¶ 3.) In connection with the transfer of the First Street Facility, Gabe and WSI executed a Consulting, Non–Disclosure, and Non–Competition Agreement ("the Consulting Agreement"). (Id. at ¶ 5.)

The Consulting Agreement provides for the payment of $100,000 per year to Gabe for consulting services, plus ordinary, necessary and reasonable expenses. (Id., Exh. B at ¶ 4.) These services were contracted for the life of the Consulting Agreement, which expired on July 2, 2001. (Id. at ¶ 6.) The Consulting Agreement also provides for a covenant not to compete for a period of three years and a confidentiality provision to last indefinitely. (Id., Exh. B at ¶¶ 9a—b.) The Consulting Agreement further provides that:

> So long as WSI and/or any of its affiliates own the [First Street Facility], WSI shall pay [Gabe] a royalty of One Dollar ($1.00) per ton for all waste delivered to the First Street Facility for as long as [Gabe] lives and thereafter to [Gabe's] designated heirs or beneficiaries. The payment of royalties under this paragraph 5 shall continue and survive the Term of this Agreement and [Gabe's] termination.

(Id., Exh. B at ¶ 5.)

WSI paid royalties to Gabe for waste delivered to the First Street Facility from July 2, 1999, until November 2000. (Id. at ¶ 8.) WSI has not requested that Gabe perform any consulting services since late 2000. (Id. at ¶ 9.)

On January 11, 2001, WSI and several affiliates filed voluntary petitions under chapter 11 of the Bankruptcy Code. On June 14, 2001, Gabe filed a Proof of Claim seeking payment of pre- and post-petition royalties under section 5 of the Consulting Agreement. (Id. at ¶ 12.) Neither WSI nor Gabe terminated the Consulting Agreement, which has since expired by its own terms. (Id. at ¶ 11.)

On September 14, 2001, Gabe, his children and Baldwin, L.P. (collectively "the Baldwins") filed an adversary proceeding against WSI, its directors, and DDJ Capital Management, Inc. The Complaint included counts for federal and state securi-

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested

matters by Federal Rule of Bankruptcy Procedure 9014.

**2.** Kelly Baldwin, Kimberly Robb, Kevin Baldwin and Kendall Baldwin.

ties fraud, misrepresentation and breach of contract. On November 1, 2001, WSI filed a Motion to Dismiss the Complaint and for Sanctions claiming, among other things, that the Complaint violated the automatic stay pursuant to section 362. On November 28, 2001, the Baldwins filed a Response to WSI's Motion to Dismiss and a Cross–Motion to Consider Complaint as Proof and Amended Proofs of Claims and Allow Administrative Claim. On January 30, 2002, WSI filed an Objection to the Baldwins' Response and Cross–Motion.

A hearing was held on February 7, 2002, at which time WSI agreed that the Baldwins' Response and Cross–Motion could be treated as a proof of claim and withdrew the sanctions motion. Following the hearing, we directed the parties to file a stipulation of facts and letter briefs on Gabe's assertion that the royalty payments due under section 5 of the Consulting Agreement is an administrative expense pursuant to section 503(b)(1)(A) of the Bankruptcy Code. On March 27, 2002, the parties filed a Stipulation of Facts Regarding Gabe's Motion to Allow Administrative Claim and Letter Briefs. On April 4, 2002, Gabe submitted a Reply Letter Brief. On May 8, 2002, WSI filed a Supplemental Letter Brief. On June 17, 2002, WSI's plan of reorganization was confirmed.

## II. *JURISDICTION*

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## III. *DISCUSSION*

■ Gabe seeks to classify the royalty payments due under the Consulting Agreement as an administrative claim pursuant to section 503(b)(1)(A) of the Bank-ruptcy Code. Section 503 of the Bankruptcy Code states in relevant part:

(a) an entity may timely file a request for payment of an administrative expense, or may tardily file such a request if permitted by the court for cause.

(b) After notice and a hearing, there shall be allowed administrative expenses, . . . including—

(1)(A) the actual, necessary costs and expenses of preserving the estate.

11 U.S.C. § 503. Whether someone is entitled to an administrative claim is determined by a two-part test: (1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction. *See, e.g., In re O'Brien Environmental Energy, Inc.,* 181 F.3d 527, 532–33 (3d Cir.1999); *In re Mid–American Waste Sys.,* 228 B.R. 816, (Bankr.D.Del.1999).

■ In the context of executory contracts, a non-debtor party to an executory contract is entitled to an administrative expense claim equal to the value of any post-petition benefit conferred on the estate prior to assumption or rejection of that contract. *See, e.g., NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); *In re BCE West, L.P.,* 264 B.R. 578, 584 (9th Cir. BAP 2001).

■ The traditional test for determining if an agreement is an executory contract pursuant to section 365 is the "Countryman" definition. The Countryman definition states that a contract is executory only where the obligations "of *both* the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, Executory Contracts in Bankruptcy; Part I, 57 *Minn. L.Rev.* 439, 460 (1973)

(emphasis added). The Third Circuit has adopted the Countryman definition. *See, e.g., Sharon Steel Corp. v. National Fuel Gas Distribution Corp.,* 872 F.2d 36, 39 (3d Cir.1989). The Third Circuit has emphasized that the court must determine whether the failure to perform an obligation under the contract would constitute a material breach. *See, e.g., In re Columbia Gas System, Inc.,* 50 F.3d 233, 244 n. 20 (3d Cir.1995); *In re Access Beyond Techs., Inc.,* 237 B.R. 32, 43 (Bankr.D.Del. 1999).

■ WSI asserts that the Consulting Agreement is not executory because it expired by its own terms on July 2, 2001. However, the time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed. *Columbia Gas,* 50 F.3d at 240. The mere fact that the Consulting Agreement itself has expired does not render the issue moot.

■ Gabe initially asserted that the Consulting Agreement is not an executory contract because his performance is complete and all that remains is WSI's obligation to pay royalties. (Baldwins' Response to Motion to Dismiss and Cross–Motion, p. 3.) Gabe further asserted that he is not required to take any affirmative action under the Consulting Agreement and that only WSI has an affirmative obligation under the Consulting Agreement, namely, to pay the royalties due post-petition. *(Id.* at p. 4.) However, a contract is not executory if the only remaining obligation is the payment of money by the debtor. *See, e.g., In re Roth American, Inc.,* 107 B.R. 44, 46 (Bankr.M.D.Pa.1989).

■ Although he initially asserted that the Consulting Agreement was not executory, in his Reply Letter Brief, Gabe asserts that the non-compete and confidentiality obligations are ongoing. However,

Gabe has offered no evidence or case law to establish that these obligations are material. *See, e.g., In re Columbia Gas Sys., Inc.,* 224 B.R. 540, 548 (Bankr.D.Del.1998) (burden of proving an administrative expense claim is on the claimant); *In re Smith Corona Corp.,* 210 B.R. 243, 245 (Bankr.D.Del.1997).

Based on the evidence presented, we cannot conclude that the Consulting Agreement was an executory contract as of the petition date. It was merely a pre-petition non-executory contract.

Since the Consulting Agreement is a pre-petition non-executory contract, any claims arising from it are general unsecured claims. As the Third Circuit stated:

> In cases where the nonbankrupt party has fully performed, it makes no sense to talk about assumption or rejection. At that point only a liability exists for the debtor—a simple claim held by the nonbankrupt against the estate ... and "[t]he estate has whatever benefit it can obtain from the other party's performance and the trustee's rejection would neither add to nor detract from the creditor's claim or the estate's liability." Rejection is meaningless in this context, and assumption would be of no benefit to the estate, serving only to convert the nonbankrupt's claim into a first priority expense of the estate at the expense of the other creditors.

*Columbia Gas,* 50 F.3d at 239 (citations omitted).

■ Gabe asserts that the royalty payments due under the Consulting Agreement are post-petition administrative claims because the payments arise only after WSI delivers waste to the First Street Facility. We disagree. The obligation to make the royalty payments arose when the Consulting Agreement was executed pre-petition. *See, e.g., In re M Group, Inc.,* 268 B.R. 896, 901 (Bankr.

D.Del.2001) (in determining administrative priority, courts look to when the acts giving rise to a liability took place, not when they accrued); *In re Nationwise Automotive, Inc.,* 250 B.R. 900, 903 (Bankr. S.D.Ohio 2000) (proper standard for determining claim's administrative priority is when the acts giving rise to the liability took place, not when they accrued). The fact that the pre-petition obligation is dependent upon the occurrence of a post-petition event does not make the obligation an administrative claim. *M Group,* 268 B.R. at 901 (it is not determinative that payment was contingent upon post-petition event where liability arose pre-petition). Instead, the obligation is a contingent claim. *See, e.g., In re M. Frenville Co., Inc.,* 744 F.2d 332, 336 (3d Cir.1984) (when parties agree in advance that one party will pay the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent). Whether the event occurs or not determines the amount of the contingent claim, not its priority.

Alternatively, Gabe asserts that the Consulting Agreement created a joint venture between WSI and himself to share in the revenue from the operations of the First Street Facility. In formation of this joint venture, Gabe asserts he contributed the First Street Facility and WSI contributed $2,200,000. Under the joint venture, Gabe asserts he was to receive the $2,200,000 paid by WSI and the right to royalties while WSI received all other revenue generated from the operation of the First Street Facility. Gabe, therefore, argues that the royalty payments are not property of the estate and he is entitled to payment of the royalties under the joint venture arrangement.

The record, however, fails to establish any basis for such an argument. There is no evidence of a joint venture or even the intent to enter into a joint venture. Rather, the property in question was sold by Gabe to WSI as evidenced by the deed, signed by Gabe, conveying fee simple title to WSI Acquisition Co., a subsidiary of WSI. (Stipulation of Facts, Exh. A.) There is no evidence that Gabe retained any property rights in the First Street Facility or an interest in a joint venture. The only remaining obligations WSI owed to Gabe was reflected in the Consulting Agreement, a pre-petition non-executory contract.

## IV. *CONCLUSION*

For the foregoing reasons, we deny Gabe's Administrative Claim.