**In re EXIDE TECHNOLOGIES,**
**et al.,[1] Debtors.**

**No. 02–11125 (KJC).**

United States Bankruptcy Court,
D. Delaware.

Dec. 5, 2007.

1. The reorganized debtors in these proceedings are: Exide Technologies, f/k/a Exide Corporation; Exide Delaware, L.L.C.; Exide Illinois, Inc.; RBD Liquidation, L.L.C.; Dixie Metals Company; and Refined Metals Corporation (For ease of reference, the reorganized debtors shall be referred to herein as the "Debtor").

Kathleen Marshall Dephillips, Laura Davis Jones, James E. O'Neill, Sandra G.M. Selzer, Christopher James Lhulier, Pachulski Stang Ziehl Young Jones, PC, Wilmington, DE, Matthew N. Kleiman, Kirkland & Ellis, Chicago, IL, Robert Alan Weber, Skadden Arps Slate Meagher & Flom LLP, Wilmington, DE, for Debtor.

## MEMORANDUM[2]

KEVIN J. CAREY, Bankruptcy Judge.

On April 15, 2005, Exide Technologies and three of its affiliates filed voluntary chapter 11 petitions with this Court. A "Joint Plan of Reorganization of the Official Committee of Unsecured Creditors and the Debtors" dated March 11, 2004 (D.I.# 3918)(the "Joint Plan"), was confirmed by Order of this Court dated April 21, 2004 (D.I.# 4340).

Currently before the Court is the Motion of William J. Rankin ("Rankin") to Enforce Plan as it Relates to Debtors' Selective Executive Retirement Agreement (D.I.# 5583)(the "Motion"). The Debtor objected to the relief requested in Rankin's Motion (D.I.# 5597). Rankin filed a Reply (D.I.# 5618). A hearing was held on the Motion. For the reasons set forth below, the Motion will be denied.

## FACTS

The facts of this matter are not disputed.[3] Rankin was an Executive Vice President of Exide, who retired in January 1999 at the age of 61, after more than ten consecutive years of employment with Exide.

On August 27, 1997, the Debtor (then Exide Corporation) and Rankin entered into a Selective Executive Retirement Agreement (the "SERP")[4] to provide "additional retirement benefits" to certain designated employees "in recognition of the contributions to the Company that have been made by those individuals." (SERP at p. 1). Under the SERP, the Debtor was to make ten annual payments of $57,500 each to Rankin. (SERP at ¶¶ 2, 4). The Debtor began making annual SERP payments to Rankin in February 2000. Rankin received three annual payments. The Debtor discontinued all SERP payments as of the bankruptcy petition date.

---

**2.** This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and § 157(b)(2)(A) and (B). The parties do not argue, and I do not perceive, that this Court's exercise of post-confirmation jurisdiction here falls outside the limitations imposed by *In re*

*Resorts International, Inc.*, 372 F.3d 154 (3d Cir.2004).

**3.** In its response to the Motion, the Debtor has reserved any right it has to object to the validity and extent of Rankin's proof of claim.

**4.** Both parties refer to this agreement as a "SERP," as will I.

Rankin argues that he is owed seven SERP payments of $57,500 or a total of $402,500. On March 5, 2003, Rankin filed a proof of claim for amounts owed under the SERP and for other wages and expense reimbursements.

## DISCUSSION

### A. The SERP is non-executory and cannot be assumed under the Joint Plan.

Rankin argues that the plain language of the Joint Plan deems all retirement plans, including the SERP, to be executory contracts that were assumed by the Debtor. Therefore, he argues, the Debtor should cure all defaults and continue making payments under the SERP. Article VI.E. of the Joint Plan states:

> Except as otherwise expressly provided herein, *all employment and severance agreements and policies,* and *all compensation and benefit plans,* policies, and programs of the Debtors *applicable to their employees, former employees, retirees* and non-employee directors and the employees, former employees and retirees of its subsidiaries, including without limitation, all savings plans, *retirement plans,* health care plans, disability plans, severance benefit agreements and plans, incentive plans, *deferred compensation plans* and life, accidental death and dismemberment insurance plan *shall be treated as executory contracts under the Joint Plan and on the Effective Date shall be deemed assumed* pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code; and *the Debtor's obligations under such programs to such Persons shall survive confirmation of this Joint Plan* except for (1) executory contract or employee benefit

plans specifically rejected pursuant to this Joint Plan (to the extent such rejection does not violate section 1114 and 1129(a)(13) of the Bankruptcy Code), (2) all employee equity or equity-based incentive plans, and (3) such executory contracts or employee benefit plans as have previously been rejected, are the subject of a motion to reject as of the Effective Date, or have been specifically waived by the beneficiaries of any employee benefit plan or contract; provided however, that the Debtors' obligations, if any, to pay all "retiree benefits" as defined in section 1114(a) of the Bankruptcy Code shall continue.

Joint Plan, Article VI.E. (emphasis by Rankin).

■ A plan of reorganization may, subject to § 365, allow for the assumption, rejection, or assignment of an executory contract that has not been previously rejected. 11 U.S.C. § 1123(b)(2). Section 1123(b), however, does not provide a debtor with blanket authority to assume or reject executory contracts through a plan; whether an agreement may be assumed or rejected as an executory contract remains subject to the requirements of Bankruptcy Code § 365. *In re O'Connor,* 258 F.3d 392, 401 (5th Cir.2001); *In re Cole,* 189 B.R. 40, 46 (Bankr.S.D.N.Y.1995).

■ Section 365 allows debtors to assume or reject an executory contract, but provides no such option for a non-executory contract. *See Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.),* 64 F.3d 141, 145 (4th Cir.1995). Before deciding whether the Debtor assumed (or could have assumed) the SERP by virtue of the Joint Plan's language, I must decide whether the SERP is an executory contract.

In determining whether a contract is executory and, hence, subject to rejection, courts in this Circuit utilize the Countryman standard, which provides that a contract is executory when "the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L.Rev. 439, 460 (1973); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir.1989); *In re Waste Systems Int'l, Inc.*, 280 B.R. 824, 826–827 (Bankr.D.Del.2002). "Thus, unless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under § 365." *Enterprise Energy Corp. v. United States (In re Columbia Gas Sys., Inc.)*, 50 F.3d 233, 239 (3d Cir.1995). Consequently, I must determine whether both parties have unperformed material obligations under the Agreement. *See Columbia Gas*, 50 F.3d at 239; *Waste Systems Int'l*, 280 B.R. at 827; *In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 43 (Bankr.D.Del.1999). In doing so, I look initially at the "four corners" of the Agreement. *See Shoppers World Community Ctr., L.P. v. Bradlees Stores, Inc. (In re Bradlees Stores, Inc.)*, 2001 WL 1112308, at *8, 2001 U.S. Dist. LEXIS 14755, at *27 (S.D.N.Y. September 20, 2001) ("the executoriness analysis examines an agreement on its face to determine whether there are material obligations that require substantial performance from the parties").

"The time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed." *Columbia Gas,* 50 F.3d at 240; *see Waste Systems Int'l,* 280 B.R. at 827; *In re HQ Global Holdings, Inc.,* 290 B.R. 507, 510 (Bankr.D.Del. 2003). Exide sought chapter 11 relief on April 15, 2002.

Other courts have determined that deferred compensation agreements or retirement agreements similar to the SERP are non-executory if, at the time of the bankruptcy filing, the executive was already retired and owed no further duties to the debtor. *Stewart Foods,* 64 F.3d at 146; *Kucin v. Devan,* 251 B.R. 269, 272 (D.Md. 2000). Paragraph 3 of the SERP states:

The participant's benefit hereunder shall become fully vested upon the effective date of participant's retirement from the company on or after his attainment of 10 years of consecutive service from date of hire and up reaching the age of $59^{1/2}$.

SERP at 1. There is no dispute that Rankin's rights under the SERP vested prior to the bankruptcy filing. The Debtor agreed to perform under the SERP based upon Rankin's past services to the company. *Id.* Rankin had no obligation to "continue in the employ of the Company in any capacity." SERP at 3. There is no evidence that Rankin owed any further duty to the Debtor under the SERP. The Debtor's sole remaining obligation under the SERP, was to make the annual payments. For these reasons, the SERP was not an executory contract at the time of the bankruptcy filing.

Because the SERP was not an executory contract, the Debtor could not assume the SERP in the Plan. *Stewart Foods,* 64 F.3d at 145. Moreover, the Joint Plan language cannot "deem" a non-executory contract to be an executory contract so that the Debtor can assume it. *See In re Fitch,* 174 B.R. 96, 101 (Bankr.

S.D.Ill.1994)("A debtor cannot change the nature of a contract merely by electing to assume it under § 365.").[5]

## B. The SERP does not provide "retiree benefits" as defined in section 1114 of the Bankruptcy Code.

▮ Rankin also argues that the Debtor cannot terminate or modify his SERP payments because those benefits are protected by Bankruptcy Code § 1114. In response, the Debtor argues that § 1114 is not applicable because the SERP does not fall with that section's definition of "retiree benefits."

Section 1114 of the Bankruptcy Code "was enacted to protect the interests of retirees of chapter 11 debtors." 7–1114 COLLIER ON BANKRUPTCY ¶ 1114.01 (15th ed. rev.2007).[6] This section prohibits a debtor in possession or a trustee from unilaterally modifying or terminating retiree benefits unless (i) the debtor in possession, or trustee, and the court-authorized representative of the retirees agree to a proposed modification, or (ii) the court orders modification after determining that it is necessary to permit the debtor's reorganization and is equitable. 11 U.S.C. § 1114(e), (g) and (h); *In re Farmland Industries, Inc.,* 294 B.R. 903, 919 (Bankr.W.D.Mo.2003).

The term "retiree benefits" is defined as:

(a) For purposes of this section, the term "retiree benefits" means pay-

---

**5.** In his Reply and at oral argument, Rankin argued that the Debtor should be equitably estopped from treating his claim as a general unsecured claim because the Debtor sent Rankin a notice that his claim was unimpaired by the Joint Plan. He claims the notice—together with the language in Article VI.E. of the Joint Plan—deprived him of his right to vote on the Joint Plan. Under Delaware law, equitable estoppel applies "when a party by his conduct intentionally or unintentionally leads another, in reliance on that conduct, to change position to his detriment." *Benitec Australia Ltd. v. Promega Corp.,* 2005 WL 549552, *5 (D.Del.2005) *quoting Waggoner v. Laster,* 581 A.2d 1127, 1136 (Del.1990). "The party claiming estoppel must show that (1) he lacked the knowledge of the true facts or he lacked the means to obtain the truth; (2) he relied on the conduct of the party against whom the estoppel is claimed; and (3) he suffered a prejudicial change of position as a result of his reliance." *Id.* At the hearing on the Motion, the Debtor provided evidence (marked as Exhibit 1) of selected pages from the Affidavit of Service for the March 2004 Information Package that was sent to creditors about the Joint Plan. (D.I.# 4315). The Service Affidavit shows that Rankin received *two* notices because he filed a proof of claim that included a priority claim. (Tr. 11/8/2006 recording at 2:10–2:19). According to the Debtor, one notice regarding unimpaired claims was sent to

Rankin based upon the filed priority claim, although the Debtor admitted that the notice did not specify a claim amount. The other package was sent to all unsecured creditors and included, among other things, a ballot, notice of important dates, and instructions. The Debtor's Exhibit 2 contained pages 34–35 of the Joint Plan, in which the Debtor reserved all causes of action not expressly settled or released, including its ability to object to proofs of claim after the Joint Plan's Effective Date. Because Rankin was given documents that provided him with the ability to make an informed choice about voting and because Rankin has not provided evidence of prejudice, equitable estoppel does not apply here.

**6.** Section 1114 was adopted on June 16, 1988 as part of the Retiree Benefits Bankruptcy Protection Act of 1988, Pub.L. 100–334, 102 Stat. 610–613 (1988), and is applicable to all chapter 11 cases commenced after June 16, 1988. This legislation was enacted in response to the termination of the health and life insurance benefits of approximately 79,-000 retirees in the *LTV Corporation* Chapter 11 case. *See LTV Steel Co., Inc. v. United Mine Workers of America (In re Chateaugay Corp.),* 922 F.2d 86, 88–89 (2d Cir.1990).

*In re New York Trap Rock Corp.,* 126 B.R. 19, 21 (Bankr.S.D.N.Y.1991).

ments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

11 U.S.C. § 1114(a)(2007). The SERP is an agreement that provides for annual payments to Rankin upon retirement. The payments are not "medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death" as evidenced by the plain language of § 1114(a). *See Farmland*, 294 B.R. at 919 (Benefit plans providing deferred compensation or benefits due upon retirement are not "retiree benefits" under § 1114).

Rankin, however, argues that the SERP is a "plan, fund, or program" that provides for death benefits because paragraph 5 of the SERP provides:

5. *Death Benefit.* In the event of the Participant's death prior to the commencement of his benefit payments pursuant to Section 4, his Beneficiary will receive a lump sum distribution equal to the present value of the Participant's retirement benefit. The determination of the amount of the death benefit payable to the Participant's Beneficiary pursuant to this Section 5 shall be made by the Committee, in its sole discretion. The benefit payment to the Participant's Beneficiary will be made on

the first day of the month following the Participant's death.

In the event of the Participant's death subsequent to the commencement of the installment payments pursuant to Section 4, his Beneficiary will receive either (i) the remaining installment payments that would have otherwise been made to the Participant or (ii) a lump sum payment equal to the present value of the remaining installments that would have otherwise been made to the Participant. The determination as to the form and the amount of the death benefit shall be made by the Committee, in its sole discretion. The benefit payment to the Participant's Beneficiary will be made on the first day of the month following the Participant's death.

(SERP at ¶ 5).

The Bankruptcy Code does not further define the words "plan, fund or program." In the *New York Trap Rock* decision, the court noted that the same words are used in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 101 *et seq.*, other federal legislation that protects employees' benefit rights, and determined:

The distinguishing feature of most of the benefits paid under an ERISA "plan, fund, or program" is that "most of these benefits ... accumulate over a period of time and are payable only upon the occurrence of a contingency outside of the control of the employee."

*New York Trap Rock*, 126 B.R. at 22. Even if I were to look to ERISA for guidance, unlike an ERISA "plan, fund, or program," the SERP payments do not arise from benefits which accumulated over a period of time.[7] Paragraph 5 of the

**7.** Query whether borrowing from ERISA would be appropriate in any event. *See How-*

SERP simply provides an alternative for the timing and method of the annual payments that are due; it does not provide for additional benefits due upon the participant's death. *In re WorldCom, Inc.*, 364 B.R. 538, 549–50 (Bankr.S.D.N.Y.2007). The benefits provided to Rankin under the SERP are not protected "retiree benefits" as defined in Bankruptcy Code § 1114.

### CONCLUSION

For the reasons given above, the SERP is not an executory contract that could have been assumed by the Debtor in the Joint Plan and the SERP does not provide "retiree benefits" protected under Bankruptcy Code § 1114. The Motion will be denied. An appropriate Order follows.

**AND NOW,** this 5th day of December, 2007, upon consideration of the Motion of William J. Rankin To Enforce Plan As It Relates To Debtors' Selective Executive Retirement Agreement (D.I.# 5583) (the "Motion"), and the objection thereto, and after oral argument, and for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** and **DECREED** that the Motion is **DENIED.**

*ard Delivery Service, Inc. v. Zurich American Insurance Co.*, 547 U.S. 651, 126 S.Ct. 2105, 2112–13, 165 L.Ed.2d 110 (2006).