264 B.R. 578 (2001)
In re BCE WEST, L.P., et al., Debtors.
Einstein/Noah Bagel Corp., Appellant,
v.
Gerald K. Smith, Plan Trustee, Appellee.
BAP No. AZ-01-1017-RPRy. Bankruptcy Nos. 98-12547-ECF-CGC to 98-12570-ECF-CGC.
United States Bankruptcy Appellate Panel of the Ninth Circuit.
Argued and Submitted on June 21, 2001.
Filed July 16, 2001.
*579 Amarjeet S. Bhachu, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Einstein/Noah Bagel Corp.
J. Henk Taylor, Lewis & Roca, L.L.P., Phoenix, AZ, for Gerald K. Smith, Trustee.
Before RUSSELL, PERRIS, and RYAN, Bankruptcy Judges.

OPINION
RUSSELL, Bankruptcy Judge.
The appellant filed an administrative claim against a chapter 11[1] debtor in possession ("DIP") from whom it had subleased office space. The basis for the claim was an alleged postpetition breach of the sublease by the DIP-sublessor for which liability was premised on § 365(d)(3) and § 503(b). After confirmation, the plan trustee objected to the claim and moved for summary judgment. The bankruptcy court granted summary judgment in the trustee's favor based on a finding that § 365(d)(3) applied only to debtor-lessees and not to debtor-lessors. This appeal followed. We AFFIRM.

I. FACTS
This appeal involves two restauranteurs, appellant Einstein/Noah Bagel Corporation ("ENBC"), a retailer of bagels and associated foods, and Boston Chicken, Inc., a purveyor of home-style meals. Boston Chicken owns half of ENBC's outstanding shares and in 1996, the two companies entered into various agreements relating to the infrastructure and operations of ENBC. Two of these agreements were for accounting and computer services to be performed by Boston Chicken on ENBC's behalf. The third was a five-year lease agreement under which ENBC subleased from Boston Chicken 38,000 square feet of the Golden, Colorado, office building where the latter maintained its headquarters. Boston Chicken itself was leasing the entire building from the Prudential Insurance Company.
Boston Chicken and ENBC amended the sublease agreement in May 1998 so that ENBC retained only 27,000 square feet. Included in the amendment was a provision requiring Boston Chicken to use its "best efforts" to obtain a non-disturbance agreement from Prudential. Such an agreement would serve to prohibit Prudential from disturbing ENBC's rights under the sublease in the event that ENBC remained current on it and Boston Chicken defaulted on the master lease with Prudential.
In October 1998, Boston Chicken, along with its affiliates, filed a chapter 11 petition and became a debtor in possession. *580 According to ENBC, in the time leading up to the petition and thereafter, Boston Chicken became unable to consistently perform its service obligations to ENBC. As a result, ENBC asserts, it began an initiative to ensure its survival in case Boston Chicken abandoned these contractual obligations. This initiative involved the separation of ENBC's facilities from those of Boston Chicken. Boston Chicken had not obtained the non-disturbance agreement from Prudential and ENBC claims that it feared immediate eviction from its subleased offices in the event that Boston Chicken or Prudential terminated the master lease. To avoid this perceived risk, ENBC relocated its offices at the end of 1999.
In March 2000, Boston Chicken moved for an order authorizing rejection of the ENBC sublease. ENBC did not oppose the motion and the bankruptcy court issued the order that next month. Under the terms of the order, Boston Chicken was deemed to have rejected the ENBC sublease upon the filing of the motion.
Boston Chicken's third amended plan was approved in May 2000. The plan provided for the sale of most of its assets to a subsidiary of the McDonald's Corporation. It also provided for the appointment of appellee Gerald K. Smith as plan trustee. Mr. Smith's duties included the collection, administration, and distribution of the sale proceeds as well as any retained assets.
Before Boston Chicken's plan was approved, ENBC had filed a "Request for Payment of Administrative Expense."[2] This request was really three administrative claims totaling $1,883,000. The first two claims were based on costs incurred due to Boston Chicken's alleged failure to perform obligations under the agreements for accounting and computer services. The third and largest one, in the amount of $1.5 million, rested on Boston Chicken's alleged breach of the sublease provision regarding the non-disturbance agreement. ENBC maintained that Boston Chicken did not use its best efforts to obtain this agreement with Prudential, thereby causing uncertainty regarding ENBC's continued occupation of its offices and ultimately, the company's relocation at a cost of $1.5 million.
In a single pleading, Boston Chicken objected to ENBC's three claims. As for the one relating to the agreement for accounting services, it urged that ENBC had no right to claim damages under the agreement except those resulting from willful misconduct or gross negligence, neither of which ENBC had asserted. As for the claim relating to the agreement for computer services, Boston Chicken maintained that the parties had terminated the agreement in February 2000 and that ENBC had expressly released Boston Chicken from any claims arising under the agreement as of termination. Finally, as for the claim relating to the sublease provision regarding the non-disturbance agreement, Boston Chicken contended that its court-approved rejection of the sublease meant that any claim by ENBC arising from a breach of the sublease would be deemed a prepetition, unsecured one under §§ 365(g) and 502(g).
ENBC disputed the first two objections and responded to the last one with the following:
The Trustee misses the mark. ENBC's claim is not a rejection claim; it does not assert damages resulting from a breach of prospective obligations under the . . . [s]ublease or damages arising for termination of that sublease. Rather, ENBC's claim is for damages resulting *581 from [Boston Chicken's] failure to perform a postpetition obligation to exercise best efforts to obtain a nondisturbance agreement from Prudential.
Einstein/Noah Bagel Corp.'s Response to Trustee's Objection to Administrative Claim, Aug. 21, 2000, p. 8. Boston Chicken's liability, it asserted, rested on § 365(d)(3), which requires the trustee (or DIP) to "timely perform all the obligations of the debtor" arising from and after the order for relief under any unexpired lease of nonresidential property. While ENBC acknowledged that § 365(d)(3) was usually invoked by landlords of debtor-lessees to enforce rent obligations, it argued that "debtor" in this section could be read to include debtor-landlords.
The trustee moved for summary judgment on his objections to ENBC's three administrative claims. Serving as grounds for his motion were the above-mentioned objections themselves. ENBC opposed the motion, restating in large part its § 365(d)(3) argument.
A hearing on the motion was held in September 2000. The bankruptcy court denied summary judgment as to the trustee's objection to ENBC's claim relating to the agreement for accounting services and granted summary judgment as to his objection to ENBC's claim relating to the agreement for computer services. Neither of these dispositions is the subject of this appeal.
On the matter of summary judgment as to the trustee's objection to ENBC's claim relating to the sublease, the court deferred ruling in order to allow it, as well as ENBC, to review case law discussed by the trustee at the hearing, but not cited in his pleadings. With the court's permission, ENBC filed a responsive brief, at which time the matter was taken under advisement. The court subsequently issued an order in which it granted summary judgment in favor of the trustee based on a finding that § 365(d)(3) applied only to debtor-lessees.
Though ENBC timely appealed, the court's order was not final because it merely granted the trustee's motion. Therefore, we remanded for the entry of a final, appealable order. Such an order was entered in March 2001 and stated that any claim of ENBC based on the sublease was "not entitled to administrative priority under 11 U.S.C. §§ 503(b), 365(d)(3) or any other provision of the Bankruptcy Code." ENBC's notice of appeal then took effect under Rule 8002(a).

II. ISSUE
Whether the bankruptcy court properly determined that ENBC's claim relating to the sublease was not entitled to administrative priority.

III. STANDARD OF REVIEW
This appeal presents a question of law. We review such questions under the de novo standard. In re Black, 222 B.R. 896, 899 (9th Cir. BAP 1998) (citing In re Kirsh, 973 F.2d 1454, 1456 (9th Cir.1992)).

IV. DISCUSSION
ENBC argues that its claim relating to the sublease was indeed entitled to administrative priority under § 365(d)(3) and § 503(b). We disagree.
1. Administrative Priority under § 365(d)(3)
Section 365(d)(3) provides in pertinent part:
The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed *582 or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.
It is ENBC's position that this section obligated Boston Chicken, the DIP, to timely perform its contractual obligation to use its "best efforts" to obtain a nondisturbance agreement from Prudential. ENBC contends that it failed to do so and that this failure gives rise to administrative liability as surely as if Boston Chicken were a debtor-lessee who did not pay rent.
The court, however, determined that this was not the case, holding that § 365(d)(3) applied only where the debtor was a lessee, not a lessor like Boston Chicken. It first traced the genesis of this section, added by Congress in 1984, to concerns by commercial landlords that the bankruptcy process held them hostage by requiring them to continue extending credit to debtor-lessees during the pendency of reorganization. Specifically, the court cited the following statement from Sen. Orrin Hatch describing the landlords' situation:
A second . . . problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services-the use of its property, utilities, security, and other services-without current payment. No other creditor is put in this position.
130 Cong. Rec. S 8891, 8895 (daily ed. June 29, 1984) (statement of Sen. Hatch), reprinted in 1984 U.S.C.C.A.N. 576, 599.
Turning to § 365(d)(3) itself, the court highlighted the last sentence of the section, stating:
Here, the final sentence of section 365(d)(3) very strongly suggests that it is limited to protecting the rights of lessors and the legislative history clearly confirms that conclusion. Indeed, the wording is highly suggestive: "Acceptance . . . does not constitute waiver . . . of the lessor's rights." Had the intent been more limited, the sentence should have referred to "a" lessor's rights. The use of "the" underscores the conclusion that the entire section is designed to protect lessors' right to payment and other performance, during the period that they would otherwise have been "held hostage."
Under Advisement Order re: Motion for Summary Judgment, Oct. 16, 2000, pp. 5-6 (emphases in original).
ENBC attacks the court's analysis, asserting that the court misconstrued § 365(d)(3). It urges that the plain language of § 365(d)(3) does not limit the application of the section to instances where the debtor is a lessee. Because the plain language is conclusive, ENBC argues, the court's reliance on legislative history in the form of Sen. Hatch's statement was erroneous. In its view, the "clear text" of § 365(d)(3) should have ended the court's inquiry. As authority for this position, ENBC cites the Supreme Court's decision in United States v. Ron Pair Enters., Inc., 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).
*583 ENBC continues by stating that even if reference to legislative history were proper, such history demonstrates that § 365(d)(3) was not intended to apply only where the debtor is a lessee. It chronicles various, unenacted predecessors to § 365(d)(3), which would have required the trustee to timely perform obligations of the "tenant," rather than the "debtor." The use of the word "debtor" in the enacted version, ENBC maintains, demonstrates that Congress intended to include not only lessees in the reach of § 365(d)(3), but also lessors.
ENBC's points are largely academic for the final sentence of § 365(d)(3), as the court noted, indicates that it is limited to instances where the debtor is a lessee. To reiterate, that sentence provides:
Acceptance of . . . performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.
It is clear from this language that it is the rights of the lessor that are being protected, not those of the lessee. Even if the statutory language were not clear, we agree with the bankruptcy court that the legislative history supports that interpretation. As the bankruptcy court pointed out, § 365(d)(3) was intended to address the problems of debtor-tenants who have stopped making rent and other required payments to the landlord. To reiterate, Congress was concerned that, pending the decision whether to assume or reject the lease,
the landlord is forced to provide current services-the use of its property, utilities, security, and other services-without current payment. No other creditor is put in this position.
130 Cong. Rec. S 8891, 8895 (daily ed. June 29, 1984) (statement of Sen. Hatch), reprinted in 1984 U.S.C.C.A.N. 576, 599. By requiring the trustee to perform the debtor's obligations under a lease of nonresidential real property, § 365(d)(3) was viewed as "insur[ing] that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease." Id.
Accordingly, ENBC's argument that both lessors and lessees are encompassed by § 365(d)(3) must be rejected.
2. Administrative Priority under § 503(b)
The bankruptcy court stated that ENBC "[did] not claim traditional administrative claim priority under section 503(b)." Under Advisement Order re: Motion for Summary Judgment, Oct. 16, 2000, p. 3. Boston Chicken cites this observation and, if true, it is not possible for us to consider ENBC's 503(b) argument on appeal. As a general rule, we will not consider an issue raised for the first time on appeal. See In re Berg, 186 B.R. 479, 482 (9th Cir. BAP 1995).
ENBC, however, did indeed raise a § 503(b) argument below. The record contains ENBC's post-hearing responsive brief, filed with permission of the court, to address case law discussed by the trustee at the hearing, but not cited in his pleadings. In this document, ENBC contended that even if § 365(d)(3) did not apply to debtor landlords, its claim relating to the sublease was entitled to administrative treatment. Specifically, it alleged that "a nondebtor party to a contract with a debtor is entitled to obtain administrative priority treatment for any postpetition benefit provided to the estate under an executory contract prior to assumption or rejection of such contract." Einstein/Noah Bagel Corp.'s Surresponse in Opposition to Trustee's Motion for Summary Judgment, Oct. 5, 2000, p. 2. According to ENBC, it had "undisputably conferred a postpetition benefit upon the [Boston Chicken] estate; *584 it performed its obligations (mainly by paying rent each month to [Boston Chicken])." Einstein/Noah Bagel Corp.'s Surresponse in Opposition to Trustee's Motion for Summary Judgment, Oct. 5, 2000, p. 3.
We note that counsel for ENBC advanced this position orally in the bankruptcy court as well, stating the following:
I mean we kept on paying rent, we paid every month and they didn't perform their obligation to exercise best efforts to get this non-disturbance agreement. So either-whether you look at § 365(d)(3), which I think is clearly applicable to debtor/landlords when you take a look at its place in the code and the other provisions that are right next to it and it is also appropriate that this claim survives under a 503(b)(1) analysis, too, as well.
Transcript of Hearing on Motion for Summary Judgment, Sept. 28, 2000, p. 20.
Thus, we are able to address ENBC's § 503(b) argument, though the court did not do so. Initially, we observe that, as a matter of law, it is true that a non-debtor party (like ENBC) to an executory contract with a debtor is entitled to an administrative claim equal to the value of any postpetition benefit conferred on the estate before assumption or rejection of that contract. In re El Paso Refinery, L.P., 220 B.R. 37, 45 (Bankr.W.D.Tex. 1998) (citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 531, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); United States Postal Serv. v. Dewey Freight Sys., Inc., 31 F.3d 620, 624 (8th Cir.1994)). It does not follow from this proposition, however, that ENBC is entitled to an administrative claim in the amount of its relocation costs.
The flaw in ENBC's reasoning involves the nature of its claim. It does not seek recovery of rent, which was a benefit conferred on the Boston Chicken estate for which ENBC received the right to use office space under the sublease. Rather, ENBC seeks recovery of its relocation costs, which did not benefit the estate. It was exactly these costs on which ENBC's claim was based. The proof of claim provided:
[Boston Chicken] failed to exercise best efforts to obtain a nondisturbance agreement from Prudential Insurance Company of America (the "Master Landlord") to recognize ENBC's right to maintain possession of its former support center facility space, as [Boston Chicken] was required to do under Section 11 of the first amendment to the Support Center Sublease. As a result of this failure, the related uncertainty surrounding whether ENBC would be able to continue to occupy this space, and ENBC's need to construct data center operations that would not be exposed to a risk of immediate eviction, ENBC was forced to find alternative space for its support center and has paid or expects to pay approximately $1.5 million to move its support center from its former facility into its new space.
Request for Payment of Administrative Expense (Schedule A), Mar. 16, 2000. p. 3.
In the end, then, ENBC's § 503(b) argument, like its § 365(d)(3) one, must be rejected. The logic gap in the former is simply not bridgeable.

V. CONCLUSION
ENBC's claim relating to the sublease is not entitled to administrative priority under § 365(d)(3) or § 503(b). The bankruptcy court properly determined such. We AFFIRM.
NOTES
[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and the Federal Rules of Bankruptcy Procedure, Rules XXXX-XXXX.
[2] ENBC's own chapter 11 petition followed soon after this filing.