**In re LASON, INC., et al., Debtors.**

**No. 01–11488(MFW).**

United States Bankruptcy Court, D. Delaware.

May 19, 2004.

Alfred Villoch, III, Curtis J. Crowther, Edward J. Kosmowski, Michael R. Nestor, Robert S. Brady, Timothy Edward Lengkeek, Young, Conaway, Stargatt & Taylor

LLP, Thomas G. Macauley, Zuckerman and Spaeder LLP, Bernard George Conaway, Fox Rothschild LLP, Wilmington, DE, Annette Kerlin McBrayer, Epstein Becker & Green, P.C., Atlanta, GA, Wendy S. Tien, U.S. Department of Justice, Washington, DC, for Debtors.

John B. Alfs, Cox, Hodgman & Giarmarco, P.C., Troy, MI, Kevin W. Gibson, Gibson & Perkins P.C., Media, PA, for Defendant.

Sean A. O'Keefe, Winthrop Couchot Professional Corp., Newport Beach, CA, for Third Party Plaintiff.

### MEMORANDUM OPINION [1]

MARY F. WALRATH, Chief Judge.

Before the Court is the Motion of Raju Venkatraman ("Venkatraman") for an Order compelling payment of an administrative expense. Lason Services, Inc. ("the Debtor") opposes the Motion. For the reasons set forth below, we grant the Motion, in part.

## I. FACTUAL BACKGROUND

Venkatraman was President and CEO of Vetri Systems, Inc. ("Vetri"). On December 17, 1998, the Debtor acquired Vetri under an Agreement and Plan of Merger ("the Merger Agreement"). Pursuant to the terms of the Merger Agreement, Venkatraman was required to enter into an Employment Agreement with Lason for a three year term, which was also signed on December 17, 1998.

Under the Merger Agreement, the consideration paid by the Debtor for Vetri consisted of an initial payment of $25 million in cash and stock and Additional Consideration in the form of Additional Purchase Payments over three years if the Debtor's EBITDA exceeded certain targets. (Merger Agreement at §§ 1.7 & 1.14.) The Debtor met the target for 1999, but failed to pay the Additional Purchase Payment due for that period. Venkatraman sued and obtained a judgment for $3,040,000 against the Debtor.

Subsequently, on February 12, 2001, Venkatraman and the Debtors entered into a Retention Agreement pursuant to which Venkatraman would be paid $100,000 if he remained employed by the Debtor through December 31, 2001. The initial $25,000 was paid to Venkatraman on execution of the Retention Agreement. The remaining $75,000 was payable on February 1, 2002.

On December 5, 2001, the Debtor and its affiliates filed voluntary petitions under chapter 11 of the Bankruptcy Code. Venkatraman continued to work for the Debtor until January 31, 2002, when he voluntarily terminated his employment.

On March 13, 2002, the Debtor filed an adversary proceeding against Venkatraman and certain other former employees seeking, inter alia, to enforce a non-compete clause in the Employment Agreement. On April 15, 2002, Venkatraman filed this Motion seeking payment of an administrative claim for the $75,000 due under the Retention Agreement and the Additional Purchase Payments due under the Merger Agreement. On April 17, 2002, Venkatraman filed an adversary proceeding against the Debtor seeking a determination that the Merger Agreement, Employment Agreement and Retention Agreement were integrated and enforceable as one contract. We stayed consideration of the Motion and Adversaries until we could determine the threshold question

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

of whether the contracts were integrated. On August 9, 2002, we issued our Opinion finding that the contracts were integrated and that, consequently, they were rejected by operation of the Debtor's confirmed Plan.

On October 23, 2003, Venkatraman re-noticed the Motion to compel payment of his administrative claims. A hearing was held on the Motion on November 23, 2003, at which time we directed the parties to brief the remaining legal issues. Briefing was completed on January 20, 2004, and the matter is now ripe for decision.

## II. *JURISDICTION*

This Court has jurisdiction over the Motion, which is a core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A), (B), and (O).

## III. *DISCUSSION*

### A. *Retention Payment*

■ Venkatraman seeks administrative claim status for the $75,000 remaining due to him under the Retention Agreement. Under that Agreement, the remaining payment was due if Venkatraman remained employed by the Debtor on December 31, 2001, or if there was a change in control of the Debtor. Since Venkatraman was employed by the Debtor on December 31, 2001, which was after the bankruptcy was filed, Venkatraman asserts that he is entitled to the $75,000 as an administrative expense.

■ We agree that Venkatraman is entitled to an administrative expense but disagree with the amount he seeks. Retention bonuses are earned on each day that the employee works and, therefore, are entitled to administrative claim status only for the period that the employee worked post-petition. *In re Hechinger Inv. Co.,* 298 F.3d 219, 225 (3d Cir.2002). Thus, we conclude that Venkatraman is entitled to an administrative claim for services rendered under the Retention Agreement for the post-petition period and a general unsecured claim for the pre-petition services.

■ It is not simply a matter of taking the $100,000 payable as a retention bonus and dividing it by the number of days covered by the agreement. Although the Retention Agreement was executed February 12, 2001, it states that its effective date was January 1, 2001. Further, on its execution, the Debtor paid Venkatraman $25,000 of the retention bonus. We conclude that the initial $25,000 was paid for executing the agreement and for time served and the remaining $75,000 was in consideration for Venkatraman's employment from the execution date of February 12 to December 31, 2001. Therefore, we conclude that Venkatraman is entitled to an administrative claim for the retention bonus in the amount of $6,055.90.[2]

### B. *Additional Purchase Payment*

■ Venkatraman also asserts an administrative claim for sums due him as Additional Consideration under the Merger Agreement, specifically the Additional Purchase Payment due February 1, 2002. He argues that, since the Merger Agreement was integrated with the Employment Agreement, the Additional Purchase Payment is payment for his services under the Employment Agreement. Because he continued to perform under the Employment

---

2. There are 322 days from February 12 to December 31, 2001, the date on which Venkatraman had to be employed to earn the retention bonus. This includes 296 days pre-petition and 26 days post-petition. The post-petition amount of the bonus is 26/322 times $75,000 or $6,055.90.

Agreement post-petition, Venkatraman argues that he is entitled to the portion of the payment earned by those post-petition services.[3] As a result, Venkatraman seeks only that portion (57/365) of the bonus earned after the Debtor filed its chapter 11 petition. He asserts that based on the integrated contracts that amount is $256,120.80.[4]

The Debtor objects to the administrative claim asserting that the *Hechinger* case is not applicable here because Venkatraman's claim is not an employee's claim for compensation but is instead deferred compensation for the sale of Vetri. As such, the Debtor argues that the claim is merely a pre-petition claim based on an alleged post-petition breach of a pre-petition contract. *See, e.g., Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.1986) (claim arising out of pre-petition contract is not administrative expense simply because the right to payment arose post-petition); *In re Waste Sys. Int'l, Inc.*, 280 B.R. 824, 828 (Bankr.D.Del. 2002) (claim arising from pre-petition contract which is dependent upon occurrence of a post-petition event is contingent pre-petition claim, not administrative claim).

In support, the Debtor cites the Merger Agreement itself which defines the Additional Purchase Payment as "Additional Consideration" for the merger. (Merger Agreement at § 1.7.) Further, the Additional Purchase Payment was payable to all Vetri shareholders, not just to Venkatraman or any other employee. (*Id.* at

§ 1.14.) Although the Debtor concedes that the Employment Agreement with Venkatraman incorporates the Additional Purchase Payment, the Debtor notes that it is payable even if Venkatraman quits or is terminated for cause. (Employment Agreement at § 3(d)(ii) & (iii).) Thus, the Debtor argues that it cannot possibly be considered compensation for services provided as an employee. The Debtor also notes that the payment is five times the amount that the Debtor's EBITDA exceeds the target. (Merger Agreement at § 1.14(A).) This is inconsistent with a payment based merely on an employee's performance. Therefore, the Debtor asserts that the payment is not incentive compensation or an employee bonus for services rendered by Venkatraman, but is instead part of the consideration due for the sale of the Vetri business. *See, e.g., In re APF Co.*, 270 B.R. 567 (Bankr.D.Del. 2001).

We agree with the Debtor's analysis. The case of *APF* is directly on point and supports our conclusion that the claim of Venkatraman is not an administrative claim for employee incentive compensation but is rather a general unsecured claim for breach of a pre-petition contract for the sale of the Vetri business. As Judge Walsh observed in *APF*:

Under § 503(b)(1)(A) administrative expenses include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the

3. Originally, Venkatraman asserted an administrative claim for the entire Additional Purchase Payment of $1.9 million ($1,641,-900 for himself and $225,492 for his children's trust which was also a Vetri shareholder). However, after the request was filed, the Third Circuit issued its *Hechinger* decision which Venkatraman acknowledges requires the apportionment of employee compensation between pre-petition services (general unse-

cured claim) and post-petition services (administrative expense). 298 F.3d at 225.

4. Our calculation is slightly different ($1,641,-800 times 57/365 equals $256,390.70). It is unnecessary to determine the correct amount, however, since no portion of the Additional Purchase Payment is entitled to administrative expense status.

commencement of the cases." 11 U.S.C. § 503(b)(1)(A); *In re Roth American, Inc.,* 975 F.2d 949, 958 (3d Cir.1992) (vacation and severance pay entitled to administrative expense priority to extent benefits were earned by services rendered postpetition); *accord Isaac v. Temex Energy, Inc. (In re Amarex, Inc.),* 853 F.2d 1526, 1531–32 (10th Cir.1988) (bonus due under employment agreement entitled to administrative priority to the extent earned postpetition).

On the other hand, if [the amount due] is deferred consideration for FPA's prepetition acquisition of Claimant' business, then the obligation is a prepetition claim even if payment came due postpetition. The fact that payments under a contract come due after the bankruptcy filing does not alter the conclusion that the payments are prepetition obligations. *Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.),* 64 F.3d 141, 146 (4th Cir.1995); *Chiasson v. J. Louis Matherne & Assoc. (In re Oxford Mgmt.),* 4 F.3d 1329, 1335 n. 7 (5th Cir.1993) ("A claim is not rendered a post-petition claim simply by the fact that time for payment is triggered by an event that happens after the filing of the petition"); *United States v. Gerth,* 991 F.2d 1428, 1433 (8th Cir.1993) ("[D]ependency on a postpetition event does not prevent a debt from arising prepetition").

270 B.R. at 570–71.

In analyzing whether the provision in *APF* was employee compensation or consideration for the sale of the business, Judge Walsh noted that the compensation was included within the definition of the overall consideration for the sale of the business. The same is true in this case. Further, Judge Walsh found that the additional consideration was calculated on a targeted EBITDA. He observed that

[T]his is consistent with an earnout provision, under which payment of the final purchase price of a business is contingent on the business maintaining targeted earnings after the sale. It is inconsistent, however, with an incentive earning arrangement that rewards an employee in proportion to the employee's performance or profit achieved.... [C]ontrary to what one would expect from an "incentive compensation" provision, there is no apparent relationship between the level of Claimants' performance and the Additional Consideration to which they become entitled.

*Id.* at 572–73. The same is true in this case.

Judge Walsh also rejected the argument that the integration of the Merger Agreement with the Employment Agreement converted the Additional Consideration to employee compensation. *Id.* at 573. "The integration of the two agreements does not transform the Additional Consideration into wages or 'incentive compensation' any more than it alters the other two forms of consideration Claimants received for the sale of ETA to FPA." *Id.* The same is true here; the mere integration of the two documents does not mean that the other consideration paid for the sale of Vetri ($25 million) is instead compensation for Venkatraman's services as an employee.

Finally, Judge Walsh noted that "the clearest indication that [the payment at issue] is deferred payment of ETA's purchase price is that the Employment Agreement itself does not treat the Additional Compensation as compensation. The compensation clause of the Employment Agreement nowhere mentions, incorporates or refers to the Additional Compensation." *Id.* The same is true here. In this case, the Additional Purchase Payment is mentioned in the Employment Agreement only in connection with the ter-

mination provisions, which preserves Venkatraman's right to that payment even if his employment is terminated. This suggests that the payment is for the sale of the business (which has concluded) rather than compensation for future services to be rendered.

This case is virtually identical to the facts in the *APF* case and we concur with the reasoning of Judge Walsh in that case. The one distinction is that the Additional Purchase Payment due under the Merger Agreement in this case was due to the Vetri shareholders, only one of whom was Venkatraman. Not all the shareholders were employees of the Debtor. Therefore, it would be illogical to conclude that the Additional Purchase Payment was compensation for an employee's services.

For the above reasons, we conclude that the Additional Purchase Payment due to Venkatraman under the Merger Agreement and Employment Agreement is not consideration for the services rendered by him as an employee of the Debtor. Therefore, we conclude that Venkatraman is not entitled to payment of the Additional Purchase Payment as an administrative expense.

## IV.  *CONCLUSION*

For the foregoing reasons, the Motion filed by Venkatraman for an order to compel payment of an administrative expense will be granted in part and denied in part. We will allow an administrative claim to Venkatraman in the amount of $6,055.90 for the portion of the retention bonus earned by him post-petition.

An appropriate order is attached.